# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

| | |
|---|---|
| ANTON WOOD ROBERTS,<br><br>Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration,<br><br>Defendant. | CV 16-158-BLG-TJC<br><br>**ORDER** |

Plaintiff Anton Wood Roberts ("Plaintiff") has filed a complaint pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner") regarding the denial of his claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433, 1381-1383f. (Doc. 1.) The Commissioner has filed an Answer (Doc. 11) and the Administrative Record ("A.R."). (Doc. 12).

Presently before the Court is Plaintiff's motion for summary judgment, seeking reversal of the Commissioner's denial and remand for an award of

disability benefits, or alternatively for further administrative proceedings. (Doc. 14.) The motion is fully briefed and ripe for the Court's review. (Docs. 18, 19.)

For the reasons set forth herein, and after careful consideration of the record and the applicable law, the Court finds Plaintiff's motion should be **DENIED**, and the Commissioner's decision denying DIB and SSI should be **AFFIRMED**.

## I.    PROCEDURAL BACKGROUND

Plaintiff previously filed an application for DIB and SSI in October 2009. (A.R. 163.) Plaintiff's prior application was denied by ALJ Michael A. Kilroy on March 15, 2011. (*Id.*)

On March 28, 2013, Plaintiff filed a second application for DIB and SSI benefits, which is the subject of this action. (A.R. 290-305.) Plaintiff alleged he has been unable to work since March 14, 2011. (A.R. 290, 297.) The Social Security Administration denied Plaintiff's second application initially on May 30, 2013, and upon reconsideration on February 11, 2014. (A.R. 184-203; 206-233.) On March 4, 2014, Plaintiff filed a written request for a hearing. (A.R. 248-49.) Administrative Law Judge Michele M. Kelley (the "ALJ") held a hearing on February 20, 2015. (A.R. 42-98.) On April 17, 2015, the ALJ issued a written decision finding Plaintiff not disabled. (A.R. 20-36.) Plaintiff requested review of

the decision on June 18, 2015.  (A.R. 16.)  The ALJ's decision became final on

September 9, 2016, when the Appeals Council denied Plaintiff's request for

review.  (A.R. 9-13.)  Thereafter, Plaintiff filed the instant action.

## II.    LEGAL STANDARDS

### A.    Scope of Review

The Social Security Act allows unsuccessful claimants to seek judicial

review of the Commissioner's final agency decision.  42 U.S.C. §§ 405(g),

1383(c)(3).  The scope of judicial review is limited.  The Court must affirm the

Commissioner's decision unless it "is not supported by substantial evidence or it is

based upon legal error."  *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).  *See*

*also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("We may

reverse the ALJ's decision to deny benefits only if it is based upon legal error or is

not supported by substantial evidence."); *Flaten v. Sec'y of Health & Human*

*Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

"Substantial evidence is more than a mere scintilla but less than a

preponderance."  *Tidwell*, 161 F.3d at 601 (citing *Jamerson v. Chater*, 112 F.3d

1064, 1066 (9th Cir. 1997)).  "Substantial evidence is relevant evidence which,

considering the record as a whole, a reasonable person might accept as adequate to

support a conclusion." *Flaten*, 44 F.3d at 1457. In considering the record as a whole, the Court must weigh both the evidence that supports and detracts from the ALJ's conclusions. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)). The Court must uphold the denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary."). However, even if the Court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a conclusion. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

### B. Determination of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) he suffers from a medically determinable physical or

mental impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the claimant incapable of performing the work he previously performed, or any other substantial gainful employment which exists in the national economy.  42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A).  A claimant must meet both requirements to be classified as disabled.  *Id.*

The Commissioner makes the assessment of disability through a five-step sequential evaluation process.  If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed further.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000)).  The five steps are:

1. Is claimant presently working in a substantially gainful activity?  If so, then the claimant is not disabled within the meaning of the Social Security Act.  If not, proceed to step two.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe?  If so, proceed to step three.  If not, then the claimant is not disabled.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1?  If so, then the claimant is disabled.  If not, proceed to step four.  *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4.  Is the claimant able to do any work that he or she has done in the past?  If so, then the claimant is not disabled.  If not, proceed to step five.  *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5.  Is the claimant able to do any other work?  If so, then the claimant is not disabled.  If not, then the claimant is disabled.  *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

Although the ALJ must assist the claimant in developing a record, the claimant bears the burden of proof during the first four steps, while the Commissioner bears the burden of proof at the fifth step.  *Tackett*, 180 F.3d at 1098, n.3 (citing 20 C.F.R. § 404.1512(d)).  At step five, the Commissioner must "show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience."  *Id*. at 1100 (quoting 20 C.F.R. § 404.1560(b)(3)).

## III.  FACTUAL BACKGROUND

Plaintiff claims to suffer from severe impairments of attention deficit/hyperactivity disorder, major depressive disorder, mood disorder, bipolar disorder, personality disorder, and seizures.  He asserts that these impairments

render him incapable of performing work he previously performed, or any other substantial gainful employment.

## A. The Hearing

A hearing was held before the ALJ in Billings, Montana on February 20, 2015, and the following testimony was provided.

### 1. Plaintiff's Testimony

Plaintiff testified that he was currently working at Eastern Montana Industries in Miles City, Montana.  (A.R. 54.)  Plaintiff was a supported living specialist, who works with developmentally disabled adults who live independently.  (*Id.*)  He assists them with laundry, grocery shopping, cleaning, and monitoring hygiene and medications.  (A.R. 54-55, 81.)  Plaintiff stated he works 15 to 20 hours per week.  (A.R. 55.)  He has a lot of flexibility with his schedule, sets his own hours, can reschedule appointments if he wants, and can take hours off throughout the day to take a nap.  (A.R. 55-57.)  Plaintiff indicated he reschedules appointments about every other week.  (A.R. 56.)  Plaintiff works one-on-one with his clients, and at the time of the hearing had six individuals he worked with.  (A.R. 54.)  Plaintiff testified that he likes his job because he likes

working one-on-one with special needs people, his schedule is flexible and he is not overwhelmed by his responsibilities. (A.R. 57.)

Previously, Plaintiff worked at the Town Pump as a janitor. (A.R. 50-51.) He stated he was feeling overwhelmed by all the people coming and going and by his coworkers. (A.R. 50.) Ultimately, he quit the job after he got angry at his boss for not allowing him to have time off for Easter dinner. (A.R. 51.) He testified that he has walked out of jobs several times because he gets overwhelmed and can't handle it. (A.R. 52.) Plaintiff stated that he has also worked construction jobs periodically. (A.R. 72-73.) He stated he got the jobs by talking to contractors he knows in Miles City. (A.R. 73.) He has not done construction work since December 2013, however, because he's out of shape and has lost the desire. (A.R. 73.) He also indicated that he has become distant from a contractor friend he used to work with due to paranoia. (A.R. 78.)

Plaintiff testified he lives with his ex-wife and two autistic children who are 14 and 15. (A.R. 58.) He described his typical non-workday as starting at 6:00 a.m. (A.R. 58.) He wakes up his children, makes breakfast, walks the dog, and makes sure his kids are getting ready. (*Id.*) He goes with his ex-wife to drop the kids at school, and he will go get coffee at a coffee house if he has money. (A.R.

59.)  Then Plaintiff will drive around, go home and watch television, and nap until 3:00 when he goes to pick the kids up from school.  (A.R. 59.)  In the evening, he takes his younger son out for walks and recreation, and plays games and reads books with his older son.  (A.R. 60.)  He cooks dinners for his family.  (A.R. 60, 75.)

On a typical workday, Plaintiff wakes up, gets the kids to school, then goes into the office at 9:00 a.m. to catch up on paperwork from the previous week.  (A.R. 61.)  Around 11:00 a.m. Plaintiff will leave to see a client.  (A.R. 62.)  He finishes his work around 2:00 p.m., and then goes home and takes a nap.  (*Id.*)  Plaintiff testified that he religiously takes a nap every afternoon.  (A.R. 59.)  After his nap, he picks up his kids and then will spend time with a friend until 3:30 p.m., when his ex-wife may need to go to work.  (A.R. 62.)  He watches the kids while she works.  (A.R. 74.)

Plaintiff testified that he goes gambling once a week.  (A.R. 76-77.)  His friend gives him $5, and they sit and have a drink and talk.  (A.R. 77.)  He also testified that he is able to travel by Greyhound bus.  (A.R. 74.)  In the summer of 2013, he travelled to Texas by bus to stay with his sister.  (A.R. 73.)  He also took a bus to and from Missoula, Montana.  (A.R. 78.)

With regard to his mental health, Plaintiff testified that he goes to therapy appointments on Thursdays from 1:00 to 2:30 p.m. (A.R. 60.) During his sessions, he talks about events during the past week and how to deal with it. (A.R. 67.) Before he leaves every session, his counselors ask him if is having any suicidal or homicidal thoughts, or if he is hearing voices or seeing things. (*Id.*) If so, they will talk him through it. (*Id.*)

As to activities of daily living, Plaintiff stated that he bathes every night (unless he is in a depressive or manic state); he has erratic eating habits, but eats dinner because he cooks four nights a week; and he walks the dog when he gets restless. (A.R. 68.) As to social functioning, he said he is a recluse, except for his circle of friends he has known his whole life. (A.R. 69.) He described himself as paranoid and afraid of new people, and he does not like groups. (*Id.*) His supervisors always intimidate him, and if he thinks he has disappointed them, he feels his world is destroyed and he becomes afraid of them. (*Id.*) Plaintiff testified that he has problems with concentration, focus and organization without his medication. (A.R. 70.) With his medication, he can stay more focused, but he still has racing thoughts. (*Id.*) Plaintiff stated he can work on tasks in 30 minute increments. (A.R. 71.) He stated he keeps a pill-planner with him at all times to

try and keep up with his medications. (*Id.*) Sometimes he doesn't take his medication because he runs out and forgets to refill it, forgets to take it, or has to wait until he gets paid to refill it. (*Id.*)

Plaintiff testified that his mental illness interferes with working because he's paranoid; he doesn't like working around large groups; he hears things; he can't maintain his focus; and his moods vacillate. (A.R. 71.) He stated he can get so depressed he can't get his work done on time or correctly, or he gets so manic he's jumping from task to task but can't finish anything. (*Id.*) He also gets overwhelmed and struggles with paperwork. (A.R. 72.)

With regard to his physical limitations, Plaintiff testified that he suffers from seizures. (A.R. 62-66.) Plaintiff stated that he had been having seizures every other day. After an adjustment to his medications, however, his seizures decreased to about two per week, and eventually he went four months without having one. (A.R. 65.) But he testified he experienced another seizure about a week before the hearing. (A.R. 62, 65.) Plaintiff testified that some of the seizures are stress related and others are just spontaneous. (A.R. 63.) When he has a seizure, he stiffens up like a board, starts shaking violently and throws things. (A.R. 64.) He can hear everything and is aware of his surroundings, but cannot respond. (*Id.*)

The seizures typically last from one to five minutes. (*Id.*) Afterward, he feels physically and emotionally drained, is very tired and just wants to sleep. (*Id.*) Plaintiff also described having auras, which are precursors to having a seizure, and headaches. (A.R. 63-64, 66.) Plaintiff testified that he gets a really massive headache every other week, and it interferes with work. (A.R. 66.) He stated that his headaches have been more frequent since he was in a car accident in October 2012. (A.R. 67.)

   2. <u>Vocational Expert's Testimony</u>

 Delane Hall, a vocational expert, also testified before the ALJ. (A.R. 82-97.) The ALJ asked Mr. Hall four hypothetical questions. First, the ALJ asked Mr. Hall to assume a person the same age as Plaintiff, and with the same work history and educational background, who could have constant interaction with coworkers and the public on a one-to-one basis, occasionally interact with small groups of five or less, occasionally interact with supervisors, can understand, remember and carry out unskilled, detailed and complex jobs up to a vocational preparation 6, but only occasionally make decisions and judgement, and can only tolerate occasional changes in a routine work environment. (A.R. 90-91.) Mr. Hall testified the hypothetical individual would be able to perform Plaintiff's past

work as a material handler, sandwich maker, laundry worker, janitor, construction laborer, and group worker. (*Id.*)

Second, the ALJ asked Mr. Hall to assume the same person but with the limitation that the person can only lift 25 pounds frequently, and 50 pounds occasionally, and cannot climb ladders, ropes or stairs and must avoid work hazards, including unprotected heights and dangerous machinery. (A.R. 91-92.) Mr. Hall stated the person could work as a sandwich maker, laundry worker, and janitor. (*Id.*)

Third, the ALJ asked Mr. Hall to assume the same person, but that the person cannot work at a fixed production rate pace, but can do goal-oriented work, and can understand, remember and carry out only unskilled tasks up to a vocational preparation of 2. (A.R. 93.) Mr. Hall stated the janitor position would be the only job the person could perform. (*Id.*) The ALJ asked if there were any other jobs in the national economy the person could do. (A.R. 94.) Mr. Hall stated the individual could work as a dishwasher, laboratory sample carrier, and cutter/paster press clippings. (A.R. 95.)

Fourth, the ALJ asked Mr. Hall to assume the same person, but with the requirement the person would be off task 20 percent of an 8-hour workday. (A.R.

95-96.)  Mr. Hall stated the individual could not perform Plaintiff's past jobs, or any other jobs in the national economy.  (A.R. 96.)

Plaintiff's counsel asked Mr. Hall whether a person doing full time work would be able to modify their schedule every other week, or miss one to two days a month.  (A.R. 96-97.)  Mr. Hall stated the scheduling would likely be a difficult accommodation, and that for unskilled work missing more than one day of work per month would not be tolerated.  (A.R. 97.)

**B.    Medical Evidence**

The administrative record includes Plaintiff's medical records from several health care providers.  The Court has summarized only those records that are relevant to the specific issues presented for review.

1.    <u>Treating Provider Evidence</u>

a.    *Pamela Colombik, LCPC*

Plaintiff was treated by Licensed Clinical Professional Counselor Pamela Colombik on a weekly basis for approximately seven years.  (A.R. 852.)  Plaintiff began seeing Ms. Colombik at the Eastern Montana Community Mental Health Center ("EMCMHC"), and then followed her to private practice at Big Sky Mental Health Services.  The record contains extensive treatment notes spanning from

14

April 18, 2013 through January 15, 2015.  (A.R. 536-47; 620-21; 630-33; 644-45; 651-54; 660-63, 669-74; 680-81; 687-88; 704-07; 713-14; 777-826.)  Ms. Colombik noted that Plaintiff often appeared disheveled, and routinely had a moderate risk of suicide and was at risk for decompensation.  (*Id.*)  In his treatment sessions, Plaintiff typically discussed issues he was facing with work, relationships, his children, money, plans and goals, his moods, anxieties, stresses, hallucinations, sleeping problems, medications, and seizures.  (*Id.*)

On February 1, 2015, Ms. Colombik completed a Mental Impairment Questionnaire.  (A.R. 852-56.)  Ms. Colombik stated Plaintiff is treated on a weekly basis because he is fragile, and there is a concern that he could decompensate.  (A.R. 852.)  Ms. Colombik indicated Plaintiff's symptoms include highs/lows, anxiety, depression, suicide/homicide ideation, sleep impairment, grandiose feelings, memory loss, appetite issues, and mood swings.  (*Id.*)  Ms. Colombik stated Plaintiff's prognosis is fair, if he has consistent monitoring and medication management.  (*Id.*)

Ms. Colombik opined Plaintiff cannot remember lengthy instructions, he needs constant supervision, but he functions more comfortably alone, and he does not respond at all to changes.  (A.R. 853.)  She indicated he is able to interact

appropriately with the general public and maintain socially appropriate behavior. But she stated he cannot travel in unfamiliar places or use public transportation. (A.R. 854.)  In terms of functional limitations, she indicated he has mild restrictions in activities of daily living, but marked restrictions in maintaining social functioning and concentration, persistence or pace.  (A.R. 855.)  She also stated he has had three or more episodes of decompensation of an extended duration.  (*Id.*)  Ms. Colombik described the episodes of decompensation as Plaintiff being suicidal, weepy, having a lack of appetite, sleeping excessively during times of frustration or relationship difficulties, and having hostile thoughts of wanting to harm others.  (*Id.*)  Ms. Colombik anticipated Plaintiff would miss one to two days of work per month due to the frequency of his bipolar cycling during the month.  (A.R. 856.)  Ms. Colombik further opined that Plaintiff performs adequately in his part time job with Eastern Montana Industries because he identifies with his clients, works alone and can take several breaks during his shifts.  (*Id.*)  She stated he cannot handle a full time job with the public.  (*Id.*)

      b.    *Patty Lavin, APRN, BC, CNS*

Plaintiff was treated by Patty Lavin, an Advanced Practice Registered Nurse, at EMCMHC for approximately seven years.  (A.R. 857.)  Ms. Lavin retired for a

year, and then returned to private practice at Big Sky Mental Health Services, and resumed treating Plaintiff. (*Id.*) Plaintiff saw Ms. Lavin for review of his psychotropic medication, as well as for therapy. The record shows Ms. Lavin saw Plaintiff on a monthly basis between October 2011 and April 2013 (A.R. 456-485; 572-74), and then on a weekly basis from August 22, 2014 through January 29, 2015. (A.R. 827-51.)

On February 3, 2015, Ms. Lavin completed a Mental Impairment Questionnaire. (A.R. 857-62.) Ms. Lavin stated Plaintiff requires close supervision and has a complicated medication regime. She noted he is bipolar, has Asperger's, and has serious impulse issues related to ADD. (*Id.*) She stated there have been multiple instances when Plaintiff's bipolar symptoms or frustration level has increased to the point where he wanted to hurt himself or others. (*Id.*) She indicated his prognosis is guarded. (*Id.*)

Ms. Lavin opined Plaintiff cannot remember work-like procedures due to his ADD, he has a short attention span, and has "big trouble" responding appropriately to changes in a routine work setting. (A.R. 858.) Ms. Lavin stated Plaintiff cannot tolerate even small changes in routines, and that he needs supervision, but dislikes it. (A.R. 861.) Ms. Lavin also stated Plaintiff's social phobia interferes

with his ability to work closely with others, and he could not complete a normal workday or week due to interruptions caused by visual and auditory hallucinations. (A.R. 858.)  Ms. Lavin further opined that Plaintiff cannot interact appropriately with the general public due to his fear of others.  (A.R. 859.)

With regard to functional limitations, Ms. Lavin noted Plaintiff has bad social anxiety which causes moderate to marked limitations in social functioning. (A.R. 860.)  She opined he had marked limitations in maintaining concentration, persistence or pace, and had a very short attention span, even with his ADD medications.  (*Id.*)  Ms. Lavin also stated Plaintiff had three or more episodes of decompensation of an extended duration, which she described as Plaintiff losing his ability to cope with stressors when he encounterd relationship stress, financial stress or was feeling overwhelmed.  (*Id.*)  Ms. Lavin indicated Plaintiff was likely to miss three or more days of work per month due to his bipolar ups and downs. (A.R. 861.)  Finally, Ms. Lavin opined that Plaintiff can only work part time, and that he is successful in his job at Eastern Montana Industries because it is similar to his home environment, and he is in control.  (*Id.*)

/ / /

/ / /

### c.   *Laura Wetherelt, APRN*

Plaintiff saw Advanced Practice Registered Nurse Laura Wetherelt at EMCMHC on a weekly to bi-weekly basis from May 2, 2013 through September 3, 2014.  (A.R. 548-71; 586-93; 616-19; 622-29; 634-43; 646-50; 646-50; 655-59; 664-68; 675-79; 682-86; 689-703; 708-12; 715-29; 735-49.)  Ms. Wetherelt managed Plaintiff's medication during that time.  (*Id.*)  Plaintiff also discussed various issues, problems, and stressors he was having in his daily life with Ms. Wetherelt.  (*Id.*) Ms. Wetherelt's progress notes indicate Plaintiff consistently suffered from depression, anxiety, bipolar moods, and hallucinations.  (*Id.*)  Her notes also indicate that Plaintiff periodically missed his medications.  (*Id.*)

### d.   *Kristian F. French, M.D.*

Plaintiff saw Dr. Kristian French for seizures in October 2013 and January 2014.  (A.R. 599-615; 863-64.)  Dr. French indicated Plaintiff's seizures did not appear to be epileptic, and she recommended increasing his Lamictal to control his symptoms.  (A.R. 602; 854.)  An EEG was performed in January 2014, with a normal result.  (A.R. 614-15.)

/ / /

/ / /

### 2. Non-Examining Physician Evidence

#### a. *Robert Bateen, Ph.D.*

Dr. Robert Bateen, reviewed Plaintiff's medical records, but did not examine him, and did not testify at the hearing. He issued an opinion on May 27 2013. (A.R. 187-192.) Dr. Bateen opined that Plaintiff had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning and concentration, persistence or pace, and no episodes of decompensation of an extended duration. (A.R. 188.) Dr. Bateen found Plaintiff was moderately limited in his ability to remember and carry out detailed instructions, but he was capable of understanding and remembering simple directions. (A.R. 190.) Dr. Bateen indicated Plaintiff was also moderately limited in being able to work in coordination or proximity to others, and being able to interact appropriately with the general public. (*Id.*) He stated Plaintiff would do best at work where only brief interactions with others are required. (A.R. 191.) Dr. Bateen further noted Plaintiff has a limited ability to cope with stress, and will do best in a work setting where he does not need to make numerous decisions or need to respond to frequent changes. (*Id.*)

/ / /

b.    *Peg Herman, Ph.D.*

Dr. Peg Herman also reviewed Plaintiff's medical records and issued an opinion on January 30, 2014.  (A.R. 213-14.)  Dr. Herman agreed with Dr. Bateen's mental limitations upon reconsideration of the initial denial of Plaintiff's claim.  (A.R. 214.)

c.    *Tim Schofield, M.D.*

Dr. Tim Schofield also reviewed Plaintiff's medical records, but did not examine him, and did not testify at the hearing.  He issued an opinion regarding Plaintiff's physical impairments on February 8, 2014.  (A.R. 215-17.)  Dr. Schofield opined that Plaintiff's seizure activity did not meet a Listings criteria. (A.R. 217.)  Dr. Schofield further opined that Plaintiff should be limited to occasionally climbing ladders, ropes, and scaffolds, and should not be in a position where he would be exposed to unprotected heights, driving, or dangerous machinery.  (*Id.*)

C.    **The ALJ's Findings**

The ALJ followed the five-step sequential evaluation process in considering Plaintiff's claim.  First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 31, 2013.  (A.R. 22.)  Second, the ALJ found that

Plaintiff has the following severe impairments: "attention deficit/hyperactivity disorder; mood disorder; major depressive disorder; bipolar disorder; personality disorder; and seizures." (*Id.*) Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any one of the impairments in the Listing of Impairments. (A.R. 23.) Fourth, the ALJ stated Plaintiff has the RFC to:

> perform medium work as defined in 20 CFR 404.1567(c) and 416.967(e) except he can occasionally interact with supervisors; can tolerate constant interaction with co-workers and the public interaction to a one-on-one basis; can occasionally interact with small groups of five or less supervisors, co-workers, or the public; cannot handle interaction with more than five supervisors, co-workers, or the public, at any one time; can tolerate only occasional changes in routine work environment; can understand, remember, carry out, and make decisions and judgments in unskilled work requiring a specific vocational preparation of two; can lift, carry, push, or pull only 25 pounds frequently, and 50 pounds occasionally; can sit for six of eight hours and stand/walk for six of eight hours; can never climb ladders, ropes, or scaffolds; and must avoid work hazards including unprotected heights, driving, or dangerous machinery.

(A.R. 25.)

The ALJ began her consideration of the RFC determination by recognizing the prior decision finding Plaintiff not disabled, and acknowledging the applicability of *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1998) and Acquiescence

Ruling 97-4(9).[1]  (A.R. 25-26.)  The ALJ stated the prior decision offered a

presumed RFC, unless Plaintiff presented sufficient evidence to rebut the

presumption.[2]  (A.R. 26.)

The ALJ next found that Plaintiff is able to perform his past work as a

janitor.  (A.R. 33.)  The ALJ alternatively found Plaintiff could perform the

---

[1] In the Ninth Circuit, the principles of res judicata apply to the Commissioner's
final decisions regarding disability.  *Taylor v. Heckler*, 765 F.2d 872, 876 (9th Cir.
1985).  However, "the doctrine is applied less rigidly to administrative proceedings
than to judicial proceedings."  *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988).
If an ALJ finds that the claimant is not disabled in a prior final decision, then a
presumption of continuing non-disability arises with respect to any subsequent
social security claim.  *Id.*; Acquiescence Ruling 97-4(9).
    In order to overcome the presumption of continuing non-disability, the
claimant bears the burden to prove "'changed circumstances' indicating a greater
disability."  *Chavez*, 844 F.2d at 693 (citing *Taylor*, 765 F.2d at 875).  Changed
circumstances include a change in the claimant's age category, an increase in the
severity of the claimant's impairments, existence of new impairments not
previously considered, or a change in the criteria for determining disability.
Acquiescence Ruling 97-4(9).

[2] The prior RFC stated Plaintiff could "perform a full range of work at all
exertional levels but with the following nonexertional limitations: mild activities of
daily living; from a social functioning standpoint with the public, the claimant can
perform 1-on-1 contact on a constant basis, he can deal with small numbers on an
occasional basis, and no large groups at any one time; he can deal with co-workers
in small groups (up to 5 or 5 at the most); with regard to supervision, no jobs that
require constant or critical, over the shoulder-type of supervision; with regard to
concentration, persistence, and pace, the job can be routine with new learning on
an occasional basis (perhaps a little more than that); no skilled positions (no jobs
with a specific vocational preparation (SVP) of 7 to 9); and no jobs with high
constant stress."  (A.R. 168.)

requirements of representative occupations such as dishwasher, laboratory sample carrier, and cutter, paster press clippings.  (A.R. 35.)  Thus, the ALJ found that Plaintiff was not disabled.  (*Id.*)

## IV.    DISCUSSION

Plaintiff argues that the ALJ erred in the following ways: (1) improperly discrediting Plaintiff's testimony (2) failing to properly evaluate the medical opinion evidence; (3) failing to find Plaintiff met Listings 12.02, 12.04 and 12.08; and (4) failing to incorporate all of Plaintiff's impairments into the vocational consultant's hypothetical questioning.

### A.    The ALJ's Credibility Determination

Plaintiff argues that the ALJ's credibility determination was erroneous because the ALJ made only a general credibility finding without providing clear and convincing reasons for rejecting his testimony.  The Commissioner counters that the ALJ properly evaluated Plaintiff's credibility.

The credibility of a claimant's testimony is analyzed in two steps.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective evidence of an impairment or impairments that could reasonably be expected to produce the pain or other

symptoms alleged. *Id.* Second, if the claimant meets the first step, and there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if she provides "specific, clear and convincing reasons" for doing so. *Id.* "In order for the ALJ to find [the claimant's] testimony unreliable, the ALJ must make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'" *Turner v. Commissioner of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 714, 722 (9th Cir. 1998) (quoting *Lester*, 81 F.3d at 834). *See also Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). The clear and convincing standard "is not an easy requirement to meet: '[It] is the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014).

To assess a claimant's credibility, the ALJ may consider (1) ordinary credibility techniques, (2) unexplained or inadequately explained failure to seek or follow treatment or to follow a prescribed course of treatment, and (3) the claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996);

*Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989).  An ALJ may also take the lack of objective medical evidence into consideration when assessing credibility. *Baston v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). However, the ALJ may not reject the claimant's statements about the intensity and persistence of their pain or other symptoms "solely because the available objective medical evidence does not substantiate [the claimant's] statements."  20 C.F.R. § 404.1529(c)(2).

Here, the first step of the credibility analysis is not at issue.  The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause his symptoms, and there is no argument that Plaintiff is malingering.  Therefore, the ALJ was required to cite specific, clear and convincing reasons for rejecting Plaintiff's subjective testimony about the severity of his symptoms.  The Court finds the ALJ did so.

The ALJ found Plaintiff's testimony regarding the degree of his limitations was only partially credible because of his non-compliance with prescribed medication, inconsistencies in his reporting regarding his seizures, and because his reported tendencies of violence were not corroborated by the record.  (A.R. 39-30.) In reaching these conclusions, the ALJ properly identified specific aspects of

Plaintiff's testimony she found not credible and cited specific evidence she believed contradicted that testimony. *Reddick*, 157 F.3d at 722; *Brown-Hunter*, 806 F.3d at 489.

For example, the ALJ noted Plaintiff reported he was noncompliant with medications due to difficulties affording his prescriptions. (A.R. 29.) The ALJ found, however, there was evidence that undermined Plaintiff's claim that he did not have resources to pay for his medications. The ALJ pointed out that Plaintiff was capable of paying to take a trip to Texas, purchasing a computer and gambling. (*Id.*) With regard to Plaintiff's seizures, the ALJ also noted that at one point Plaintiff stated the seizures started 6 years prior (A.R. 564), whereas another time he reported the seizures had been going on for about a year. (A.R. 865.) The ALJ further noted that the record did not show any evidence of violence during the alleged period of disability, in contradiction to Plaintiff's claims.

The ALJ's observations are generally supported in the record.[3] Although

---

[3] The Court finds the ALJ erred to the extent she found Plaintiff's testimony was less credible because of non-compliance with his treatment generally. (A.R. 29.) The Ninth Circuit has cautioned that a claimant's lack of compliance with mental health treatment should not be a basis for an adverse finding of credibility when the lack of compliance is attributable to the individual's mental illness. *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking

this Court may not evaluate the evidence in the same way as the ALJ, the Court may not substitute its own interpretation of the evidence for the ALJ's interpretation. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Accordingly, the Court finds the ALJ properly considered Plaintiff's testimony, and provided sufficiently specific, clear and convincing reasons for her conclusion with respect to Plaintiff's credibility.

## B.    The ALJ's Evaluation of the Medical Source Opinions

Plaintiff contends that the ALJ failed to give proper weight to the opinions of his counselors Patty Lavin and Pamela Colombik. He also argues the ALJ did not give proper weight to the opinion of Charles Johanssan, Ph.D., from the Montana Vocational Rehabilitation Program.

At the time Plaintiff's claim was filed, the Social Security regulations separated medical evidence into two categories: (1) "acceptable medical sources," which includes licensed physicians and licensed or certified psychologists; and (2)

---

rehabilitation."). The Court does not find this error requires reversal, however. Even if one or more reasons listed by the ALJ are invalid, the ALJ's credibility determination will be upheld so long as the ALJ provides some valid reasons. *Bray v. Comm'r*, 554 F.3d 1219, 1227 (9th Cir. 2009); *Carmickle v. Comm'r*, 533 F.3d 1155, 1162-63 (9th Cir. 2008). As discussed, the ALJ provided other valid reasons for discounting Plaintiff's credibility.

"other sources," which includes nurse practitioners, physician's assistants, therapists, and counselors. 20 C.F.R. 416.913(a), (d) (amended March 27, 2017). *Leon v. Berryhill*, 2017 WL 7051119, *3 (9th Cir. Nov. 7, 2017) (noting that prior to March 27, 2017, opinions of "other sources," such as nurse practitioners were not given the same weight as a physician's opinions). Opinions of "other sources," are not entitled to the same deference as "acceptable medical sources." *Molina v. Astrue*. 674 F.3d 1104, 1111 (9th Cir. 2012). The ALJ may discount opinions from "other sources" as long as the ALJ gives "germane reasons" for doing so. *Id.*

1. <u>Pamela Colombik and Patty Lavin</u>

In her decision, the ALJ considered Ms. Colombik and Ms. Lavin's treatment notes (A.R. 27-29), as well as the Mental Impairment Questionnaires completed by Ms. Colombik on February 1, 2015, and by Ms. Lavin on February 3, 2015. (A.R. 31-32.) The ALJ afforded both opinions "little weight." (A.R. 32.)

Because Ms. Colombik and Ms. Lavin are not licensed physicians or psychologists, they are not "acceptable medical sources." *See* 20 C.F.R. 416.913(a), (d) (amended March 27, 2017). Thus, Ms. Colombik and Ms. Lavin are "other sources" whose opinions the ALJ could reject for germane reasons. *Molina*, 674 F.3d at 1111. The Court finds the ALJ met that standard here.

The ALJ explained that Ms. Colombik's opinions regarding Plaintiff's functional limitations were inconsistent with the evidence. (A.R. 32.) The ALJ's observations are consistent with the evidence in the record. For example, Ms. Colombik opined Plaintiff could not perform work-like procedures or understand simple instructions. The ALJ stated this opinion was contradicted by the fact Plaintiff had engaged in work activity throughout the period of disability. (*Id.*) Ms. Colombik indicated Plaintiff could not work in proximity to others, but the ALJ noted Plaintiff was currently working with disabled individuals, which necessarily would require him to coordinate and work in proximity with them. (*Id.*) The ALJ also noted that Ms. Colombik opined Plaintiff could not take public transportation, but the evidence showed he took a bus to Texas. (*Id.*) Likewise, the ALJ found Ms. Lavin's opinion, which reported similar limitations as Ms. Colombik, was contradicted by Plaintiff's actual activities that showed he had greater functioning than she opined. (*Id.*)

The ALJ also found the objective record did not support Ms. Colombik and Ms. Lavin's assertions that Plaintiff suffered three or more episodes of decompensation. As the ALJ correctly pointed out, there is no evidence Plaintiff had inpatient care or suffered extended periods of decompensation. *See* 20 C.F.R.

Part 404, Subpart P, Appx. 1 § 12.00(C)(4) (amended January 17, 2017) (stating episodes of decompensation may be inferred from medical records showing "significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode").

The Court finds, therefore, that the ALJ provided sufficiently germane reasons which are supported by evidence in the record for affording Ms. Colombik and Ms. Lavin's opinions lesser weight.

### 2. Vocational Rehabilitation Records

The evidence before the ALJ also included records from the Montana Vocational Rehabilitation Program. (A.R. 757-76.) The records consist of a Career Assessment Inventory Profile Report by Charles Johansson, Ph.D., and notes from vocational counselor, Cheri Reed. (*Id.*) It does not appear Mr. Johansson provided an opinion concerning Plaintiff's functional capacity. However, the notes from Ms. Reed do indicate judgments about the nature and severity of Plaintiff's impairments and his ability to work. (A.R. 773-76.) For

example, Ms. Reed noted Plaintiff has limitations in interacting appropriately with peers and supervisors, accepting supervision and criticism, has poor decision making and judgment, and has difficulties with self-direction and following through with tasks. (A.R. 774.)

The ALJ's opinion indicates she considered at least one of the vocational counselor's notes, which indicated Plaintiff was enjoying his current job at Eastern Montana Industries (A.R. 29), but the ALJ did not otherwise address or assign any specific weight to the opinions in the vocational records.

The Commissioner did not respond to Plaintiff's argument that the ALJ erred with respect to these records. Nevertheless, the Court finds the ALJ's failure to comment on the opinions is harmless because the ALJ's RFC determination contains restrictions that would account for the limitations noted by Ms. Reed. For example, the RFC restricted Plaintiff to only occasional interaction with groups of no more than five people, limited interaction with supervisors, and unskilled work that requires only occasional decisions and judgments and involved only occasional changes. (A.R. 25, 33.)

Accordingly, the Court finds the ALJ did not err with regard to Charles Johansson, Ph.D. or the records from the Montana Vocational Rehabilitation Program.

### C. The ALJ's Determination Plaintiff's Impairments Did Not Meet Listings 12.02, 12.04, and 12.08

Plaintiff next argues the ALJ erred at step three by finding he did not meet the criteria for presumptive disability under Listings 12.02 for organic mental disorders, 12.04 for affective disorders, and 12.08 for personality disorders. Plaintiff also asserts the ALJ failed to obtain a medical expert to testify at the hearing contrary to SSR 96-6p.[4]

In order for Plaintiff to meet Listings 12.02, 12.04, or 12.08, he must have a disorder that satisfies the requirements of paragraphs A and B, or paragraph C of the Listings. 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00. Paragraphs A and C are not in dispute here. Paragraph B requires that a claimant's mental

---

[4] Plaintiff asserts the ALJ was required to obtain a medical expert pursuant to SSR 17-2p. (Doc. 14 at 9.) The Commissioner counters that SSR 17-2p "does not exist." (Doc. 18 at 16.) The Commissioner is wrong. SSR 17-2p exists and became effective on March 27, 2017. *See* SSR 17-2p, 2017 WL 3928306. SSR 17-2p rescinded and replaced SSR 96-6p, which was in effect at the time of Plaintiff's hearing. Therefore, although Plaintiff cites SSR 17-2p, the Court will analyze Plaintiff's argument under SSR 96-6p, which was applicable at the time the ALJ made her decision.

impairment results in at least two of the following: (1) marked restrictions of activities of daily living; (2) marked restrictions in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence or pace; and (4) repeated episodes of decompensation, each of extended duration. *Id.*

Here, The ALJ found Plaintiff had only mild restrictions in activities of daily living, moderate restrictions in social functioning and maintaining concentration, persistence, and pace, and no episodes of decompensation of an extended duration. (A.R. 23-24.) In reaching these conclusions, the ALJ cited evidence that Plaintiff provided care for his children and his girlfriend's children, cared for pets, maintained personal care, prepared meals, did laundry, household chores, took walks, drove a car, went shopping, attended sporting events, and maintained part-time employment. (*Id.*) The ALJ also noted that Plaintiff reported maintaining friendships and being able to secure "odd jobs" from others, and being able to work with individuals on a one-on-one basis. (A.R. 24.) The ALJ further cited evidence that Plaintiff was capable of performing work activity and activities of daily living that showed he was able to follow simple directions and perform at least simple tasks. (*Id.*)

Plaintiff argues the ALJ's conclusions in this regard are internally inconsistent, and cites to evidence which he believes warrants a finding of more severe impairment in each functional area.

The Court finds the ALJ conducted a thorough analysis at step three. In discussing each of the paragraph B criteria, the ALJ cited specific evidence from the record to support her conclusions. (A.R. 23-24.) The ALJ's observations are consistent with the evidence in the record.[5] To be sure, the evidence in this case could be interpreted more favorably to Plaintiff. However, when there is more than one reasonable interpretation of the evidence, the Court may not substitute its judgment when the ALJ's interpretation is supported by substantial evidence. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

The Court further finds that the ALJ did not err by failing to obtain a medical expert to testify. SSR 96-6p provides that an ALJ is required to obtain an updated medical opinion from a medical expert when "additional medical evidence is received that in the opinion of the [ALJ] may change the State agency medical or

---

[5] To the extent the ALJ's determination was inconsistent with the treating providers' opinions and Plaintiff's testimony, the Court has found the ALJ's assessment of the opinion evidence and Plaintiff's credibility was supported by substantial evidence, as discussed above.

psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." SSR 96-66p, 1996 WL 374180, at *4. Plaintiff argues that because approximately 100 pages of additional medical records were submitted after the last agency review, the ALJ was required to seek an updated medical opinion. The Court disagrees.

An ALJ's decision to obtain an updated medical opinion is discretionary in nature. The Ninth Circuit has stated that SSR 96-6p requires updated opinions only where the ALJ "believed that the evidence suggests that a judgment of equivalence might be reasonable or that newly-received evidence might change the agency medical consultant's opinion." *Harris v. Colvin*, 584 Fed.Appx. 526, 528 (9th Cir. 2014).

Here, the evidence that post-dated the agency medical experts' opinions showed similar symptoms to those contained in the records the medical experts had already considered. Further, the ALJ discussed the evidence that post-dated the medical opinions in explaining her decision. (A.R. 29-32.) Therefore, the ALJ could have reasonably concluded the additional information would not have changed the medical experts' opinions.

Accordingly, the Court finds the ALJ's finding that Plaintiff did not meet Listings 12.02, 12.04 or 12.08 was supported by substantial evidence.

### D. The ALJ's Failure to Incorporate Impairments into Hypothetical Questions Posed to the Vocational Expert.

If a claimant shows he cannot return to previous work, the burden of proof shifts to the Secretary at step five to show that the claimant can do other kinds of work. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). The Secretary may use a vocational expert to meet that burden. *Id.* Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant. *Id.* "The testimony of a vocational expert 'is valuable only to the extent that it is supported by medical evidence.'" *Magallanes*, 881 F.2d 747, 756 (9th Cir. 189) (quoting *Sample*, 694 F.2d 639, 644 (9th Cir. 1982)). If the assumptions in the hypothetical are not supported by the record, then the vocational expert's opinion that the claimant has a residual working capacity has no evidentiary value. *Embrey*, 849 F.2d at 422

Plaintiff argues that the hypotheticals the ALJ relied on to find there are jobs he can perform exceeded the limitations found by Plaintiff's treating providers. As discussed above, the Court has determined the ALJ adequately supported her reasons for discounting Plaintiff's testimony and the medical source evidence.

37

Accordingly, the hypotheticals the ALJ relied on properly accounted for all of Plaintiff's limitations that the ALJ found credible and supported by evidence in the record. Therefore, the Court finds the ALJ's determination at step five is supported by substantial evidence,

## V.      CONCLUSION

Based on the foregoing,  **IT IS ORDERED** that the Commissioner's decision denying DIB and SSI is **AFFIRMED**, and that Plaintiff's motion for summary judgment (Doc. 14) is **DENIED**.

**IT IS ORDERED**.

DATED this 29th day of March, 2018.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge